## CITY OF STILLWATER et al. v. HAMILTON.

No. 13130—Opinion Filed Sept. 15. 1925.

1. **Municipal Corporations—Powers of Governing Body Controlled by Charter or Statute.**
The board of commissioners, or other legislative body, of a municipal corporation can exercise those powers only which are expressly or impliedly delegated to or conferred upon such legislative body by charter or statute.

2. **Same — Straightening or Narrowing Streets.**
Under the power given by section 4548, C. S. 1921, to a city to "straighten or otherwise improve" streets and avenues, or under the power delegated by section 4563, C. S. 1921, to a city to vacate streets and avenues whenever deemed necessary or expedient, it may, by ordinance, cause a street or avenue to be straightened or narrowed where no collusion or fraud is practiced, and where the purpose of straightening or narrowing such street or avenue is for the benefit of the general public and not for the benefit of individuals or private property owners.

### 3. Same—Ordinance — Incidental Vacation of Part of Street.

An ordinance vacating a portion of a street for the purpose of straightening or narrowing the same is not invalidated by a provision in the ordinance that the vacated portion of said street shall be deeded to the abutting property owner, as the title to said vacated portion becomes vested in the abutting property owner by operation of law, and such provision in the ordinance is surplusage.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Payne County; Chas. C. Smith, Judge.

Action by Hays Hamilton against the City of Stillwater et al. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

C. C. Suman, for plaintiffs in error.

Chester N. Lowry and Brown Moore, for defendant in error.

Opinion by JARMAN, C. The original town site of the city of Stillwater, Okla., was platted with the streets and avenues 100 feet wide. Later, an addition, known as College addition, was platted and annexed to the city and its streets and avenues are 75 feet wide. The avenues in the original town site run east and west, and the same were extended through College addition. The southern boundary of Fifth avenue in College addition is in a direct line and coincides with the southern boundary of Fifth avenue in the original town site, but on account of Fifth avenue being only 75 feet wide in the addition and 100 feet wide in the original town site, the northern boundary thereof in the addition lacks 25 feet of being on the line with the northern boundary of said avenue in the original town site. In other words, there was what the parties designate as a "jog" or an offset in the avenue of 25 feet when it reached the addition. Husband street, running north and south and intersecting Fifth avenue, is the dividing line between the original town site and the addition. The city officials decided to pave a certain district, including Husband street, and caused plans and a plat to be made thereof by the city engineer, which were adopted and approved by the city, and Husband street was paved to a width of 30 feet in the center of the street and returns were being made from Fifth avenue on both sides of Husband street for the paving of Fifth avenue and at a width of 30 feet in the center thereof, which would leave a parking space of 22 1-2 feet on either side of the avenue in the addition, but in the original town site the parking space would be 22 1-2 feet on the south side and 47 1-2 feet wide on the north side. In order to straighten Fifth avenue and make it of a uniform width up to the business section, the city passed an ordinance vacating 25 feet on the north side of said avenue in the original town site, and authorized a quitclaim deed to be executed conveying said 25 feet to the abutting owner, Theo Cudgel, one of the defendants herein. Fifth avenue runs between block 11 on the north and block 14 on the south. Hays Hamilton, the plaintiff in the trial court, defendant in error here, owned lot 24, block 14, which is 25 feet wide and 140 feet long and lies adjacent to and parallel with Fifth avenue. The defendant Cudgel, as above indicated, owned the property on the north side of Fifth avenue and immediately opposite the lot owned by Hamilton, and it is known as lot 13 of block 11 and is of the same dimensions as lot 24 of block 14, the property of Hamilton, and it likewise lies adjacent to and parallel with Fifth avenue.

Immediately upon learning that the city commissioners were attempting to narrow Fifth avenue, the plaintiff filed a protest against such procedure and later commenced this action to have the ordinance vacating a portion of said avenue declared null and void and to enjoin the defendant Cudgel, the abutting property owner, from claiming ownership of or exercising control over the 25 foot strip that was attempted to be vacated, and to enjoin the city and the contractors, Cudgel and McVay, from paving the intersection of Fifth avenue and Husband street according to the plans and plat which recognized the vacation of a portion of Fifth avenue and contemplated the placing of the pavement of Fifth avenue, when made, in the center of said avenue and at a width of 30 feet, as heretofore indicated. The plaintiff further alleged that he would suffer irreparable damage by the vacating of said portion of the avenue and that no provision was made by the city, in the proceedings to vacate said portion of the avenue, to compensate him for the damage suffered. Upon filing the action, the plaintiff procured a temporary injunction and thereafter, upon a hearing being had on the merits, a judgment was rendered declaring the ordinance to be null and void and making the temporary injunction permanent as prayed for, and the defendants have appealed.

The first proposition urged by the plaintiff to sustain the judgment of the trial court

is that the power of the city as a municipality is limited, and that there must be an express grant of authority to do the act which the municipality attempts; citing In re Gribben, 5 Okla. 379, 47 Pac. 1074, to sustain this proposition. This requires us to consider the applicable portions of the city charter and of the statute, which are as follows:

"The city of Stillwater shall have and exercise such general power over its streets, alleys and public property and make provisions relating thereto as are now provided by law or as may be hereafter provided by ordinances." Sec. 12, art. X, Charter of City of Stillwater.

"The city of Stillwater shall have power, by ordinances duly passed, to regulate, operate or control the streets and alleys of the said city of Stillwater, or may confer, by ordinance, upon any person or corporation. the franchise or the right to use the property of the city for the purpose of furnishing to the public any general public service. * * *" Sec. 14, art. X, Charter of City of Stillwater.

"The city council shall have power, in addition to the other provisions granted by law, to open, straighten, widen, extend and otherwise improve streets, avenues, lanes and alleys and to make sidewalks and to build bridges, culverts and sewers within the city. * * *" Sec. 4548, Comp. St. 1921.

"The council shall have power to annul, vacate or discontinue, or to grant to any public use any street, avenue, alley or lane whenever deemed necessary or expedient. * * *" Sec. 4563, Comp. St. 1921.

The plaintiff insists that there is no provision in the city charter or the statute conferring power or authority upon the city to vacate only a portion of a street or avenue. Upon the determination of this question depends the disposition of the case here on appeal: for if the city had the delegated power to vacate a portion of Fifth avenue, then the exercising of such power is a legislative or political function which will not be reviewed by the courts except where there has been collusion or fraud. Mottman v. City of Olympia (Wash.) 88 Pac. 579; Ponischil v. Hoquiam Sash & Door Co. (Wash.) 83 Pac. 316; Brown v. Board of Sup's (Cal.) 57 Pac. 82; Symons v. City (Cal.) 42 Pac. 913. No contention is made that there was any collusion or fraud practiced in the vacating of a portion of said avenue, but, on the contrary, the evidence shows that this action was taken on the part of the city for the purpose of straightening and making the avenue uniform in width and for the promotion of the interests of the public. We think sections 4548 and 4563, Comp. St. 1921.

supra, plainly confer authority upon the city to vacate a portion of a street or avenue. Said section 4548 expressly provides that:

"The council shall have power * * * to **straighten** * * * **and otherwise** improve streets, avenues, lanes and alleys."

Fifth avenue lacked 25 feet on the north side thereof, in the original town site, of being straight, and, under the authority and power delegated by the Legislature to the city commissioners, they were authorized to straighten said avenue under the provisions of said section 4548, supra. This section vests a very wide discretion in the city commissioners and they were not limited in their authority to take any steps that they deemed expedient or necessary for the public interest or welfare in the improvement of the streets or avenues of the city; for said section 4548 not only authorizes the city council or commissioners to open, straighten, widen or extend the streets and avenues, but to "otherwise improve" the same. In other words, this language is sufficiently broad to authorize the city commissioners to take any action with reference to the improving of the streets and alleys of the city, whether it be to decrease or extend the width or length of such streets and avenues.

Counsel for plaintiff seem to rest their case upon the provisions of section 4563, supra, which vests the power in the city council or commissioners to annul, vacate or discontinue any street or avenue whenever deemed necessary or expedient. Council contend that while the city commissioners had the power and authority to vacate the entire avenue, they had no authority, under this section, to vacate only a portion thereof. It is true that this section does not, by express terms, authorize the vacating of a portion of a street or avenue, but the power to vacate the entire street or avenue carries with it, by necessary implication, the power and authority to do the lesser, which is the vacating of a part of a street or avenue. The power to do the greater carries with it, by necessary implication, the power and authority to do the lesser thing. This principle was involved in the case of Sunderland v. United States, decided November 17, 1924, and reported in the United States Court Reporter December 15, 1924. There a Creek Indian was allotted a homestead with restrictions against alienation until April 26, 1931, subject, however, to removal, wholly or in part, by the Secretary of the Interior, "under such rules and regulations concerning the terms of sale and disposal of the proceeds for the

benefit of the respective Indians as he may prescribe." (Act May 27, 1908). The Secretary of the Interior removed restrictions from a portion of the homestead, which was then sold, and the Secretary of the Interior authorized the investment of the proceeds in other land, and the deed thereto contained a clause to the effect that such land could not be alienated prior to April 26, 1931, unless it was done with the consent and approval of the Secretary of the Interior. Thereafter, the allottee sold the land without the consent or approval of the Secretary of the Interior. It was contended that there was no provision in the Act of Congress conferring the authority upon the Secretary of the Interior to impose restrictions upon the alienation of land acquired by the investing of proceeds derived from the sale of restricted land; and it is true that there is no express provision in the Act authorizing the Secretary of the Interior to impose restrictions upon the alienation of such land, but the Supreme Court of the United States held, in disposing of this proposition, as follows:

"Indeed, we think the authority of the Secretary to withhold his consent to the proposed investment of the proceeds, subject to his control, includes the lesser authority to allow the investment upon condition that the property into which the proceeds are converted shall be impressed with a like control."

The exact question here involved was under consideration in the case of Mt. Carmel v. Shaw, 155 Ill. 37, and the court announced the following rule:

"Under the power given by statute to the city to vacate streets, it may vacate a strip upon each side of the street so as to narrow it where the purpose of narrowing is not to benefit private owners, but because it is deemed that so great a width of street is not required for public use." Moyer v. Village of Tentopolis, 131 Ill. 552.

The statute under consideration in the case of Mt. Carmel v. Shaw, supra, provides that the city "has power to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve its streets and sidewalks and vacate the same." It will be noted there is no language expressly authorizing the city of Mt. Carmel to vacate a portion of the street. In commenting on the question under consideration in the body of the opinion, the court said:

"The rights of the parties to this controversy seem to depend largely upon the question whether the city, under its power to vacate streets has power to vacate only a portion of a street. Under the familiar

rule that the whole of a thing includes all of its parts, it would seem that it has. In the Village of Hyde Park v. Dunham, 85 Ill. 569, this court, speaking of the village there a party, said: 'The corporate authorities are vested with complete control, as is every other municipal corporation, over its streets. They may contract or widen them, whenever, in their opinion, the public good shall so require. Property owners purchase and hold subject to these powers and they have no vested right to deny the widening, contracting or otherwise improving any street'."

Having concluded that the city commissioners of Stillwater had the delegated power and authority to vacate a portion of Fifth avenue, the exercising of such power or authority, being a legislative or political function, will not be reviewed here, there being no collusion or fraud practiced in connection therewith.

It is claimed that the portion of the ordinance attempting to convey the vacated strip of 25 feet to Cudgel, the defendant, is void as being ultra vires; but this does not affect the situation, for when that portion of the avenue was abandoned and vacated by the city, the same, by operation of law, became a part of the abutting or adjoining property and the title of Cudgel, the abutting property owner, was extended to this vacated or abandoned strip, and, as stated by the court in the case of City of Mt. Carmel v. Shaw, supra, in disposing of a similar question:

"It follows that the concluding words of the section, to the effect that the strip taken from the streets was donated and given to the lot or lots, were but mere surplusage."

For the reasons hereinabove given the ordinance passed by the commissioners of the city of Stillwater was valid, and the judgment of the trial court is reversed, and the cause remanded, with directions to dismiss the action of the plaintiff.

By the Court: It is so ordered.